**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>      Plaintiff,<br><br>vs.<br><br>WPN CORPORATION; RONALD LABOW; SEVERSTAL WHEELING, INC. RETIREMENT COMMITTEE; MICHAEL DICLEMENTE; DENNIS HALPIN; WHEELING CORRUGATING COMPANY RETIREMENT SECURITY PLAN; and SALARIED EMPLOYEES' PENSION PLAN OF SEVERSTAL WHEELING, INC.,<br><br>      Defendants. | No. 2:14-cv-01494-NBF |

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

AND NOW come Defendants, the Severstal Wheeling, Inc. Retirement Committee (the "Retirement Committee"), Michael DiClemente, and Dennis Halpin (collectively, "Defendants"), by and through their undersigned counsel, Saul Ewing LLP, and respectfully submit this Reply in Further Support of Motion to Dismiss or, in the Alternative, Motion for Summary Judgment:

**I.     INTRODUCTION**

The DOL has finally, despite multiple prior requests from Defendants (see, e.g., Doc. #114, case management deadline for parties to stipulate to time periods of exposure), attempted to narrow its claims to the following primary allegations: (1) Defendants failed to monitor Labow's management of the Plans from December 5, 2008 through May 19, 2009, in violation of ERISA §§404(a)(1)(A) and (B); (2) Defendants failed to prudently invest the Plans' assets from November 3, 2008 through December 5, 2008 in violation of ERISA §§404(a)(1)(A) and (B); and (3) Defendants are liable as co-fiduciaries for the breaches of Labow, in violation of ERISA

§§405(a)(2) and (3).  (Doc. #130, at 10).  Regardless, the claims still suffer from fatal factual and legal deficiencies as further stated below, and the Amended Complaint should be dismissed.

## II. LEGAL ARGUMENT

### A. The DOL's Affidavit Should be Stricken

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4).  See also Slater v. Susquehanna Cty., 613 F. Supp. 2d 653, 666 (M.D. Pa. 2009), aff'd, 465 F. App'x 132 (3d Cir. 2012) ("affidavit . . . which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight.").

The Affidavit of Elham Fayyazi submitted by the DOL, however, contains inappropriate legal conclusions and actual legal citations regarding "a number of facts essential to opposing" Defendants' dismissal requests.  (See Doc. #130-1).  The Affidavit is filled not with firsthand facts, but with mere conclusory argument and speculation from the DOL as to what facts *might* be helpful to the DOL's position in this case.  The Affidavit ignores that full factfinding already took place in the Southern District of New York action, and further disregards the duplicative nature of the proposed expedition for facts that the DOL *might* also require in this case.  The self-serving Affidavit should, therefore, be stricken and disregarded.

### B. Professional Investment Managers, Labow/WPN, Were Appointed to Manage the Plans' Assets for the *Entire* Relevant Time Period

Defendants previously briefed why the DOL's ERISA Section 404(a) claims should be dismissed under Rule 12 or on summary judgment.  (See Doc. #125, at 8-14).  In response, the DOL now argues that the "backdating" of the IM Agreement to November 3, 2008 is ineffective and that Defendants were obligated to invest the Plans' assets prior to the execution of the IM Agreement around December 5, 2008.  (See Doc. 130, at 15-18).  This claim remains in error.

The DOL fails to cite to a single relevant legal authority to support its opposing view. (See Doc. #130, DOL Brief, at 15-18). The DOL does correctly cite to case law holding that "ERISA preempts state decisional rules of contract interpretation, and . . . any ambiguities in ERISA plans and insurance policies should be resolved by referring to the federal common law rules of contract interpretation." Phillips v. Lincoln Nat. Life Ins. Co., 978 F.2d 302, 307 (7th Cir. 1992). It fails, however, to point the Court to any contrary federal common law rule negating the retroactive effect of the IM Agreement by the agreement of the parties. The Supreme Court, for example and to the contrary, has cited to freedom of contract as an "ancient concept[]" of the common law. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 11 (1972). Freedom of contract is a cornerstone of American jurisprudence. 8 WILLISTON ON CONTRACTS §18:1 (4th ed.) ("freedom of contract has been regarded as part of the common-law heritage so that absent an invalidating cause such as mistake, fraud, or duress, parties who make a contract are bound to it even though the contract may be unwise and even foolish"). Defendants and Labow exercised this well-settled freedom during their arrangement regarding the effective date of the IM Agreement. The DOL has not offered any law overriding this historic right.

Furthermore, the DOL has not made an argument to justify its conclusory attempts to overcome the clear, expressed terms of an indisputably authentic writing relevant to the pleadings, the IM Agreement. See ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."). The DOL simply cannot (and has not attempted) to overcome basic contract law and federal pleading law.

Labow was an investment manager within the meaning of ERISA for the entire time frame that the DOL alleges the Plans sustained damages (*i.e.*, from November 3, 2008 forward).

Due to this continuous appointment of investment managers, Defendants had no further duty[1] to invest or otherwise manage the Plans' assets. See 29 U.S.C. §1105(d)(1).

      **C.     Defendants Cannot be Held Liable as Co-Fiduciaries of Labow**

Defendants previously briefed the reasons why the DOL's ERISA Section 405(a) claims should be dismissed under Rule 12 or summary judgment. (See Doc. #125, at 14-17). The DOL alleges in response that Defendants are liable as co-fiduciaries for the breaches of Labow, in violation of ERISA §§405(a)(2) and (3). (Doc. #130, at 10). The DOL argues, without citation to law, that ERISA Section 405(d)(1), 29 U.S.C. §1105(d)(1), does not exculpate Defendants because they are simply named fiduciaries who are not within the protected class of "trustees" who are expressly included in that subsection.

The DOL does not attempt to supply a definition of trustee or identify who, if anyone, was a trustee to the subject Plans. Instead, it merely concludes that Defendants are not trustees. Neither the case law nor a reasonable reading of the operative statutory provision restricts Section 405(d)(1)'s exculpatory provision in the manner that the DOL now argues.

Section 405(d)(1) provides:

> If an investment manager or managers have been appointed under section 1102(c)(3) of this title, then, notwithstanding subsections (a)(2) and (3) and subsection (b) of this section, **no trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager**.

29 U.S.C. §1105(d)(1) (emphasis added). Section 1102(c)(3), cited in Section 405(d)(1) provides that "a person *who is a named fiduciary* with respect to control or management of the assets of the plan may appoint an investment manager or managers to manage . . . any assets of a plan." 29 U.S.C. §1102(c)(3) (emphasis added). Therefore, the underlying conduct relevant to

---

[1] In fact, it appears that the DOL concedes this point if the IM Agreement was effective as dated. (See Doc. #130, at 17-18, where the DOL requests leave to amend if the IM Agreement is effective on November 3, 2008).

Section 405(d)(1), *i.e.*, appointment of an investment manager, is performed by a named fiduciary, as occurred in this case by Defendants appointing Labow as investment manager. It follows that the fiduciary's appointment of an investment manager would, accordingly, trigger for these fiduciaries protection from ERISA's prudent investor rules and would be sufficient to invoke Section 405(d)(1) for the benefit of the fiduciary taking such requisite action.

The Second Circuit has used the term "named fiduciary" and "trustee" interchangeably when discussing Section 405(d)(1):

> **The obligations of *named fiduciaries* with regard to their duty of care, however, can be reduced by the appointment of an investment manager under ERISA Section 402(c)(3)**. Under Section 405(d)(1), **once such an appointment has been made, the *trustees* cannot be held liable for any act or omission of that investment manager so far as the assets entrusted to the manager are concerned**. The plain intent of this statutory structure is to allow plan trustees to delegate investment authority to a professional advisor who then becomes a fiduciary with a duty of care and duty of loyalty to the plan while the trustees' legal responsibilities regarding the wisdom of investments are correspondingly reduced.

Lowen v. Tower Asset Mgmt., Inc., 829 F.2d 1209, 1219 (2d Cir. 1987) (emphasis added). The Second Circuit described the appointment of an investment manager as a way for the named fiduciaries to reduce their obligations and duty of care through reliance on Section 405(d)(1). In this case, it was Defendants who appointed Labow, a professional and previously successful investment manager, and it is Defendants who should be protected for that act of prudence. Absent application of Section 405(d)(1) to Defendants, the incentive for named fiduciaries to appoint professional investment managers to oversee plan assets is abrogated.

Additionally, sister trial courts such as the Northern District of Illinois have recognized that "even if [the party] is not a trustee [under ERISA], but simply a named fiduciary, the legislative history of ERISA, relevant regulation, and case law support the conclusion that §405(d)(1) shields it from liability." Harris Trust & Sav. Bank v. Salomon Bros., 832 F. Supp.

5

1169, 1178 (N.D. Ill. 1993).  That Court cited, for instance, to congressional reports that explained that "as long as the named fiduciary had chosen and retained the investment manager prudentially, the named fiduciary would not be liable for the acts or omissions of the manager." Id. (citing *Joint Explanatory Statement of Committee of Conference*, H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess. (1974)).  See also In re GCO, LLC, 324 B.R. 459, 464 (Bankr. S.D.N.Y. 2005) (agreeing that Section 405(d)(1) reduced obligations of named fiduciaries).

The DOL has not even attempted to offer any law contrary to the above, but merely assumes that Section 405(d)(1) only applies to a limited class of unidentified trustees and that Defendants otherwise do not qualify for the subsection's protections.  To the contrary, Section 405(d)(1) does indeed exculpate Defendants for the co-fiduciary breaches of duty of Labow, who was properly appointed by Defendants as an investment manager of the Plans.

### D. The DOL's "Failure to Monitor" Claim should be Dismissed

Defendants previously briefed the reasons why the DOL's ERISA Section 404(a) claims should be dismissed under Rule 12 or summary judgment.  (See Doc. #125, at 8-14).  The DOL now alleges in response that Defendants failed to monitor Labow's management of the Plans from December 5, 2008 through May 19, 2009, in violation of ERISA §§404(a)(1)(A) and (B). (Doc. #130, at 10).  To the extent that the duty to monitor survives, for example, the exculpatory protections of Section 405(d)(1) (see supra), this claim fails for a number of additional reasons.

The DOL once again attempts to bootstrap the liability of Labow onto Defendants by asserting that this Court should treat Defendants as the guarantors of Labow's conduct, which is not within the contemplation of ERISA.  The DOL itself, through a bulletin it cites with approval in this case, expressly acknowledges that the duty to monitor does not require fiduciaries to watch every single move of an investment manager, as it now apparently contends:

6

> Q: What are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to those appointments?
>
> A: At reasonable intervals *the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary* in such manner as may be reasonably expected *to ensure that their performance has been in compliance with the terms of the plan and statutory standards,* and satisfies the needs of the plan. No single procedure will be appropriate in all cases; the procedure adopted may vary in accordance with the nature of the plan and other facts and circumstances relevant to the choice of the procedure.

Graden v. Conexant Sys., Inc., 574 F. Supp. 2d 456, 466 (D.N.J. 2008) (quoting 29 C.F.R. §2509.75–8, at FR–17) (emphasis original).

The DOL's primary qualm appears to be that the Retirement Committee did not immediately jump to terminate Labow when it learned of Labow's November 2008 investments for the Plans. (See Doc. #120, DOL Brief, at 11-12). The DOL's allegations continue to center on Labow's failure to manage and invest the funds correctly, which cannot be imputed to Defendants under Section 405(d)(1) (see supra). The DOL argues, in essence, that Defendants had an immediate and clear duty to second-guess Labow's investment decisions. The DOL, however, cites no law to support such a DOL-imposed duty, which actually applies a *de facto* strict liability standard on named fiduciaries who, without the benefit of the DOL's current hindsight, do not immediately reverse an investment manager's decision that later results in losses to the plan.

Moreover, there are operative facts not in dispute, including Defendants' retention of learned legal counsel (McGuire Woods) and continued consultation with outside investment professionals (Mercer) once the Retirement Committee first discovered questions surrounding the Plans and Labow. (See Doc. #125, at 14). Simply, Defendants surrounded themselves with well-seasoned professionals and acted in a timely manner. In other words, Defendants relied

upon an entire advisory team following notice of potential problems to monitor and make decisions regarding the Plans, Labow's status, and the strategy of the Retirement Committee as a whole. Defendants did, therefore, monitor Labow to the extent necessary, and did so properly.

The DOL asserts that it *might* need discovery on certain topics, it *might* need the assistance of experts, and it *might* uncover contrary facts. This type of speculative discovery expedition should be denied, especially considering the significant efforts already expended on the very same facts in the Southern District of New York and Second Circuit. There are already sufficient undisputed facts that Defendants acted reasonably and prudently.

### E.     The DOL Should Not be Permitted to Further Amend its Claims

The DOL requests as alternative relief that it be permitted to alter its claims once again via amendment. (See Doc. #130, DOL Brief, at 17-18). Any further amendment by the DOL should be denied. See Goldfish Shipping, S.A. v. HSH Nordbank AG, 623 F. Supp. 2d 635, 639–40 (E.D. Pa. 2009), aff'd, 377 F. App'x 150 (3d Cir. 2010) ("a court may deny amendment of a complaint if such amendment would be inequitable, *i.e.,* the need for the amendment is the result of the movant's undue delay, bad faith or dilatory motive; the need for the amendment is the result of movant's repeated failure to cure deficiencies by amendments previously allowed; and/or the amendment would cause undue prejudice to the opposing party.").

The DOL already had one opportunity to amend following similar motion to dismiss briefing by Defendants directed to the DOL's original Complaint. The DOL has been on notice since at least March, 2015 regarding the basis for many of the currently-pending dismissal arguments. (See Doc. #21-22, 25-26); (see also Doc. #114, where this Court prompted the DOL to narrow its allegations). Moreover, while the DOL relies upon the issuance of the Southern District of New York and Second Circuit opinions after the filing of the Amended Complaint as grounds to support further amendment (see Doc. #130, at 17), it has consistently rejected that the

findings in the parallel New York action have any bearing on the DOL's prosecution of this case. (See id. at 16-17). The Southern District of New York's opinion was issued on August 10, 2015 (over 17 months ago), while the Second Circuit opinion was issued on September 21, 2016.

Accordingly, the DOL should either be denied the request for further amendment from the outset, or should at least be required to proceed to file an appropriate motion for leave attaching its proposed amendment in order to provide Defendants the full and fair opportunity to respond to precisely how the DOL intends to amend (and, in fact, provide the Court a clearer manner to decide the issue).

### III.  CONCLUSION

For the reasons set forth further above, and those stated more fully in Defendants' original briefing, Plaintiff's Amended Complaint should be dismissed for failure to state a claim under ERISA and/or on summary judgment.

Respectfully submitted,

SAUL EWING LLP

/s/ Michael J. Joyce

Charles Kelly, Esq.
PA ID No. 51942
Michael J. Joyce, Esq.
PA ID No. 311303
One PPG Place, 30th Floor
Pittsburgh, PA 15222
Tel.: (412) 209-2500
Fax: (412) 209-2590
ckelly@saul.com
mjoyce@saul.com

*Counsel for Defendants, the Severstal Wheeling, Inc. Retirement Committee, Michael DiClemente and Dennis Halpin*