UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| EDWARD C. HUGLER, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR[1], : | |
| Plaintiff, : | Case No. 2:14-cv-01494-NBF |
| v. : | |
| WPN CORPORATION, RONALD LABOW, SEVERSTAL WHEELING, INC. RETIREMENT COMMITTEE, MICHAEL DICLEMENTE, DENNIS HALPIN, WHEELING CORRUGATING COMPANY RETIREMENT SECURITY PLAN, and SALARIED EMPLOYEES' PENSION PLAN OF SEVERSTAL WHEELING, INC., : : : : | |
| Defendants. : | |

---

## SECRETARY'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS

I.   INTRODUCTION

The Court gave the parties leave to file supplemental briefs on Defendants Severstal Wheeling, Inc. Retirement Committee ("Retirement Committee"), Michael DiClemente ("DiClemente"), and Dennis Halpin's ("Halpin") (collectively "the Committee Defendants") duty to monitor their service provider, Ronald LaBow and his company WPN Corporation (collectively "LaBow").  The discussion below makes clear that the Committee Defendants breached their duty to monitor LaBow under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and that the Secretary's Amended Complaint is well

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Edward C. Hugler, the current Acting Secretary of Labor, is substituted as Plaintiff for Thomas E. Perez, former Secretary of Labor, who ceased serving as Secretary of Labor on January 20, 2017.

pled.  Therefore, the Committee Defendants' motion to dismiss or in the alternative motion for summary judgment should be denied.

II.     ARGUMENT

    A.    The Committee Defendants Breached Their Duty to Monitor Their Service Provider LaBow in Violation of ERISA.

As soon as the Committee Defendants retained LaBow to provide services to the Wheeling Corrugating Company Retirement Security Plan and the Salaried Employees' Pension Plan of Severstal Wheeling, Inc. (collectively the "Plans"), their duty to monitor him began. Courts have uniformly recognized that a duty to monitor a service provider is inherent in a fiduciary's power to appoint and dismiss that service provider.  *Coyne & Delany Company v. Selman,* 98 F.3d 1457, 1465-66 (4th Cir. 1996); *Martin v. Feilen*, 965 F.2d 660, 669-70 (8th Cir. 1992), *cert. denied,* 506 U.S. 1054 (1993); *Henry v. Frontier Industries, Inc*., 1988 WL 132577, *3 (9th Cir. 1988); *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc*., 805 F.2d 732, 736 (7th Cir. 1986), *cert. denied*, 482 U.S. 915 (1987); *Leigh v. Engle,* 727 F.2d 113, 134–35 (7th Cir. 1984); *In re RCN Litigation*, 2006 WL 753149, *9 (D.N.J. 2006); *Graden v. Conexant Systems, Inc*., 574 F.Supp. 2d 456, 466-67 (D.N.J. 2008); *In re Merck & Company, Inc. Securities Derivative & ERISA Litigation*, 2006 WL 2050577, *17 (D.N.J. 2006); *Mehling v. New York Life Ins. Co*., 163 F. Supp. 2d 502, 509-10 (E.D. Pa. 2001).  The Secretary's regulations also identify fiduciaries' duties to monitor their service providers.  29 C.F.R. § 2509.75–8, at FR–17.

The duty to monitor requires a fiduciary to act when she/he discovers that the service provider has failed to comply with its contract, the plan's documents, or the requirements of ERISA.  *Coyne,* 98 F.3d at 1465-66*; Feilen,* 965 F.2d at 669-70; *Leigh,* 727 F.2d at 135-36*; Liss v. Smith*, 991 F. Supp. 278, 311 (S.D.N.Y. 1998); *Atwood v. Burlington Industries Equity, Inc*.,

1994 WL 698314, *6 (M.D.N.C. 1994); *Whitfield v. Tomasso* 682 F.Supp. 1287, 1305 (E.D.N.Y. 1988).

Courts have upheld this duty to monitor and to remove errant service providers in the context of plan investments, such as in the present case with LaBow. *Leigh,* 727 F.2d at 134-35; *RCN,* 2006 WL 753149 at *9; *Graden*, 574 F.Supp. 2d at 466-67; *Merck,* 2006 WL 2050577 at *17-18; *Mehling,* 163 F. Supp. 2d at 509-10; *Liss,* 991 F. Supp. at 310-11; *Whitfield,* 682 F.Supp. at 1295, 1305.

In the analogous case of *Arakelian v. National Western Life Insurance Company*, 755 F. Supp. 1080 (D.D.C. 1990), the plan trustees delegated all of the administrative functions of the plan to a service provider. The court held that the plan trustees were not absolved of all responsibility and that they still retained a duty to monitor their service provider to ensure that he was doing his job properly and in the best interest of the participants. *Id*., at 1084. Similarly in the instant case, the Committee Defendants did not escape all responsibility after hiring LaBow. The Committee Defendants retained their duty to monitor their service provider to make certain he was acting in compliance with ERISA and the Plans' documents.

As fully discussed below, the Committee Defendants failed to monitor LaBow. When the Committee Defendants finally discovered that the Plans were not diversified and that LaBow was not managing the assets, they failed to act. The Committee Defendants' inaction breached their fiduciary duties and enabled LaBow's breaches to continue. Several hundred participants[2] and their beneficiaries lost over $15 million as a result[3].

---

[2] The publicly available Form 5500 reports filed annually by the Plans with the Department of Labor indicate that there were 944 participants at the end of the 2008 plan year and 796 at the end of the 2009 plan year.

[3] *Severstal Wheeling, Inc. Retirement Committee v. WPN Corp*., 119 F.Supp. 3d 240, 270 (S.D.N.Y. 2015), aff'd., *Severstal Wheeling, Inc. Retirement Committee v. WPN Corp.,* 659 Fed. Appx. 24, 2016 WL 4533478 (2nd Cir. 2016).

B.  The Committee Defendants Allowed the Plans' Losses to Mount Without Removing LaBow or Taking Other Action.

The Committee Defendants failed in a number of ways to oversee LaBow.  As an initial matter, they failed to draft and execute a contract setting the terms of LaBow's service to the Plans prior to the establishment of the independent Severstal Trust.  (Amended Complaint, ¶22).  The Committee Defendants likewise failed to draft and provide LaBow with an investment policy for him to follow in investing the Plans' assets.  (Amended Complaint, ¶22; Fayyazi Declaration attached to the Secretary's Response to Motion to Dismiss at ¶3f).  The Committee Defendants failed to inquire into the assets transferred to the Plans on November 3, 2008 by LaBow.  (Amended Complaint, ¶18).  The Committee Defendants rubber stamped their approval of the undiversified Neuberger Berman account at the request of the Trustee, Citibank, on November 4, 2008 and backdated their approval to November 3, 2008.  (Amended Complaint, ¶20).  No one else was empowered to accept these assets into the Plans' new trust except the Committee Defendants.  (Amended Complaint, ¶20; Fayyazi Declaration at ¶3o).  The Committee Defendants continued to fail to inquire into the assets held by the Plans until informed by Mercer almost two months later on or about December 29, 2008.  (Amended Complaint, ¶25).

After belatedly learning that the Plans were undiversified and that LaBow was not managing the assets, the Committee Defendants continued to fail to oversee LaBow.  The Committee Defendants remonstrated with LaBow and asked to get a redistribution from the WHX Trust instead of immediately acting to preserve the Plans' assets for the participants and their beneficiaries.  (Amended Complaint, ¶26; Fayyazi Declaration at ¶3l).  An additional three months elapsed until LaBow sold the Plans' assets and put them in cash on March 24, 2009.  (Amended Complaint, ¶27).  The Committee Defendants then allowed the Plans assets to sit

undiversified in cash and without an investment plan. (Amended Complaint, ¶28). When new members joined the Retirement Committee after DiClemente and Halpin's departure, they quickly terminated LaBow and moved to diversify the Plans' assets into Vanguard index funds. (Amended Complaint, ¶¶ 6, 7, 28).

The Committee Defendants argue that the steps they took in hiring ERISA counsel and Mercer satisfied their duty of oversight. Contrary to these assertions, the Committee Defendants' actions were insufficient to meet their duty and to protect the Plans' assets. The Committee Defendants treated the Plans as if there was an ongoing trust that only had to be monitored occasionally to assure the continuation of existing management. They were not dealing with an established trust with existing service providers, however. The Severstal Trust was newly established on November 3, 2008 from a transfer of approximately $30 million in assets from the WHX Trust. (Amended Complaint, ¶19). As stated above, the Committee Defendants had no written agreement with LaBow to act as investment manager at the initiation of the Severstal Trust. (Amended Complaint, ¶22). The Plans' assets also had to be transferred to a new trustee, National City Bank, by the end of the year. (Amended Complaint, ¶17). In addition, with the financial markets in turmoil, the Committee Defendants should have had a heightened awareness of the need to protect the Plans' assets. The circumstances surrounding the Plans' establishment of a new trust called for more than the ordinary monitoring efforts for an existing trust.

The Court should not decide these issues until it has a complete record. Discovery is necessary on a number of the issues. Why did the Committee Defendants fail to act after they discovered that the Plans were not diversified and their service provider LaBow had not been managing the assets? Why did the Committee Defendants not conclude an investment

management agreement with Neuberger Berman after being directed to do so by Labow in November 2008? (Fayyazi Declaration at ¶3g). Why did the Committee Defendants continue to rely on WHX and LaBow when they had failed to fulfill previous requests to distribute the Plans in cash to the new trust and had missed dates to distribute the Plans' assets to the new trust? (Fayyazi Declaration at ¶3d). Why did the Committee Defendants rely on emails and phone calls and not reach a written and binding agreement with WHX and LaBow prior to the initiation of the new trust? What reports and other information did the Committee Defendants receive regarding the assets in the Plans' trust? What did Mercer and ERISA counsel tell the Committee Defendants to do? Why did the Committee Defendants never act when it became obvious LaBow was failing to manage the Plans' assets and was not responsive to the Retirement Committee's directions? Why did the Plans have to wait for new members to replace DiClemente and Halpin before the Retirement Committee fired LaBow and diversified the Plans' assets?

The Committee Defendants were responsible for the retirements of hundreds of participants and their beneficiaries and failed to take even the most basic steps to inform themselves of the disposition of the Plans' assets. The Committee Defendants alone were responsible for accepting the assets into the Plans and for failing to inquire into what the Plans had received. When it was clear LaBow had failed to manage the Plans' assets, the Committee Defendants continued to fail to act. Congress meant for the fiduciary standards of ERISA to be "the highest known to the law." *Tatum v. RJR Pension Investment Committee*, 761 F.3d 346, 355-56 (4th Cir. 2014) (citation omitted), *cert. denied,* 135 S.Ct. 2887 (2015). The Committee Defendants' actions in this case fall far short of that standard.

III.     CONCLUSION

As discussed in the Secretary's response to the Committee Defendants' motion to dismiss and in this supplemental brief, the Secretary has alleged an abundance of facts in the Amended Complaint to support his causes of action against the Committee Defendants. Therefore, the Committee Defendants' motion should be denied.

        Respectfully submitted,

        Nicholas C. Geale
        Acting Solicitor of Labor

        Oscar L. Hampton III
        Regional Solicitor

        /s/ John M. Strawn
        Attorney, PA ID # 49789
        Office of the Solicitor
        Suite 630 East, The Curtis Center
        170 South Independence Mall West
        Philadelphia, PA 19106-3306
        Telephone No. (215) 861-5145
        Facsimile No. (215) 861-5162
        strawn.john@dol.gov
        zzsol-phi-docket@dol.gov

        U.S. DEPARTMENT OF LABOR

By:   /s/ Michael A. Comber
      Assistant United States Attorney
      PA ID # 81951
      U.S. Department of Justice
      United States Attorney's Office
      700 Grant Street, Suite 400
      Pittsburgh, PA 15219
      michael.comber@usdoj.gov

      Attorneys for Plaintiff

      March 17, 2017