UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------
R. ALEXANDER ACOSTA, SECRETARY     :
OF LABOR, UNITED STATES DEPARTMENT :
OF LABOR[1],                       :
                                   :
                    Plaintiff,     :
                                   :    Case No. 2:14-cv-01494-NBF
           v.                      :
                                   :
WPN CORPORATION, RONALD LABOW,     :
SEVERSTAL WHEELING, INC. RETIREMENT
COMMITTEE, MICHAEL DICLEMENTE,     :
DENNIS HALPIN, WHEELING
CORRUGATING COMPANY RETIREMENT     :
SECURITY PLAN, and SALARIED
EMPLOYEES' PENSION PLAN OF         :
SEVERSTAL WHEELING, INC.,
                                   :
                    Defendants.
------------------------------------------------------------------

## SECOND AMENDED COMPLAINT

Plaintiff, R. Alexander Acosta, Secretary of Labor, United States Department of Labor, ("Secretary") hereby alleges:

## JURISDICTION AND VENUE

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA" or "the Act"), 29 U.S.C. § 1001, *et seq.*, and is brought to obtain relief under Sections 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132, in the form of equitable remedies that will redress violations, obtain appropriate equitable relief for breaches of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109, and obtain such further equitable relief as may be appropriate to enforce the provisions of Title I of ERISA.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), R. Alexander Acosta, the current Secretary of Labor, is substituted as Plaintiff for Thomas E. Perez, former Secretary of Labor, who ceased serving as Secretary of Labor on January 20, 2017. Secretary Acosta was sworn in as Secretary of Labor on April 28, 2017.

2. This Court has subject matter jurisdiction over this action pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3. Venue with respect to this action lies in the United States District Court for the Western District of Pennsylvania, pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).  Defendants Michael DiClemente and Dennis Halpin reside within the jurisdiction of the Court.

## THE PARTIES

4. The Secretary, pursuant to Sections 502(a)(2) and (5) of the Act, 29 U.S.C. §§ 1132(a)(2) and (5), has the authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of claims against fiduciaries and others who commit violations of ERISA.

5. The Wheeling Corrugating Company Retirement Security Plan and the Salaried Employees' Pension Plan of Severstal Wheeling, Inc. ("the Plans") were established to provide retirement income to employees and therefore are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and subject to the coverage of the Act pursuant to Section 4(a) of ERISA, 29 U.S.C. § 1003(a).  The Plans are joined as party defendants pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

6. WPN Corporation ("WPN") is a New York corporation and has its principal place of business in New York, New York.  WPN signed a contract titled "Third Amendment to the Severstal Wheeling, Inc. Investment Management Agreement" ("IM Agreement") with the Severstal Wheeling, Inc. Retirement Committee ("SRC") to act as the Plans' investment manager on December 5, 2008, which was backdated to November 1, 2008.

    WPN had "complete, unlimited and unrestricted management authority with respect to the investment" of the Plans' assets pursuant to the IM Agreement. WPN sold the Plans' assets and gave investment advice to the SRC. WPN acted as the Plans' investment manager until the IM Agreement was terminated on May 19, 2009. WPN is therefore an investment manager and a fiduciary to the Plans within the meaning of ERISA §§ 3(21) and 3(38), 29 U.S.C. §§ 1002(21) and 1002(38), and a party in interest with respect to the Plans within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

7. Ronald LaBow is the sole officer and principal owner of WPN. LaBow signed the IM Agreement for WPN to act as the Plans' investment manager on December 5, 2008 and backdated it to November 1, 2008. The IM Agreement specified that LaBow had "primary responsibility for performing the services" under the IM Agreement. LaBow acted for WPN as the Plans' investment manager until the IM Agreement was terminated on May 19, 2009. LaBow sold the Plans' assets and gave investment advice to the SRC. Therefore, LaBow was a fiduciary to the Plans within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), and a party in interest with respect to the Plans within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A). Upon information and belief, LaBow resides in the state of Florida.

8. The Severstal Wheeling, Inc. Retirement Committee ("SRC") is identified as the Plan Administrator and a Named Fiduciary for each of the Plans pursuant to the Plans' documents. The SRC retained service providers for the Plans and approved payments from the Plans' assets. Therefore, the SRC is a fiduciary to the Plans within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), and a party in interest with respect to the Plans within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A). The SRC does not

have a principal place of business and, upon information and belief, its current members reside in Pennsylvania, Ohio, and Michigan.

9. Michael DiClemente became a member of the SRC no later than June, 2008 and remained a member until approximately February, 2009. While he was a member of the SRC, he was a Named Fiduciary pursuant to the Plans' documents. DiClemente retained service providers for the Plans and approved payments from the Plans' assets. Therefore DiClemente was a fiduciary to the Plans within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), and a party in interest with respect to the Plans within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A). Upon information and belief, DiClemente lives in McKees Rocks, Pennsylvania.

10. Dennis Halpin became a member of the SRC no later than June, 2008 and remained a member until approximately April, 2009. While he was a member of the SRC, he was a Named Fiduciary pursuant to the Plans' documents. Halpin retained service providers for the Plans and approved payments from the Plans' assets. Therefore Halpin was a fiduciary to the Plans within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), and a party in interest with respect to the Plans within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A). Upon information and belief, Halpin lives in Bethel Park, Pennsylvania.

## GENERAL ALLEGATIONS

11. From on or about November 3, 2008 until May 19, 2009, the Plans' assets were imprudently invested. WPN and LaBow served as the investment manager for the Plans and failed to prudently invest the Plans' assets in breach of their fiduciary duties from on or about November 3, 2008 through May 19, 2009. The SRC, and its members

DiClemente and Halpin, failed to properly oversee the Plans and monitor WPN and LaBow, in breach of their fiduciary duties from on or about November 3, 2008 through May 1, 2009 when new members replaced DiClemente and Halpin on the SRC. The fiduciary breaches by the SRC, DiClemente, Halpin, WPN, and LaBow caused the Plans to sustain losses and lost earnings in excess of $7 million.

12. In the alternative, WPN and LaBow did not act as investment managers of the Plans within the meaning of ERISA § 3(38), 29 U.S.C. § 1002(38), from on or about November 1, 2008 until on or about December 5, 2008. The backdating of the IM Agreement was ineffective to relieve the SRC, DiClemente, and Halpin from responsibility or liability for any responsibility, obligation, or duty they had to invest the Plans' assets and contrary to ERISA § 410(a), 29 U.S.C. § 1110(a). The SRC, DiClemente, and Halpin retained control of the Plans' assets from on or about November 1, 2008 until on or about December 5, 2008 and failed to prudently invest those assets in violation of their fiduciary duties under ERISA.

13. Severstal Wheeling, Inc. ("SWI") was the Plans' sponsor during the period relevant to this Complaint and is now no longer in business.

14. During the period relevant to this Complaint, the SRC was composed of directors, officers, or employees of SWI and acted as the Plan Administrator for the Plans.

15. Prior to November 3, 2008, the Plans' assets were held in the WHX Trust, which held the assets of several pension plans. The assets of the WHX Trust were managed by WPN and LaBow.

16. In or about June, 2008, Citibank, N.A., the Trustee of the WHX Trust, announced that it would discontinue its trust services by the end of 2008.

17. As a result of Citibank's decision, the Plans' assets were to be separated from the WHX Trust and deposited into a new standalone trust, which was subsequently renamed the Severstal Wheeling, Inc. Pension Plan Master Trust (Severstal Trust").

18. Citibank remained the Plans' Trustee after the Severstal Trust was established on November 3, 2008 until replaced by National City Bank on or about December 31, 2008.

19. The SRC, DiClemente, and Halpin were aware that the Plans' assets were to be divested from the WHX Trust but did not ensure that the Plans' assets were actively managed when they were deposited in the Severstal Trust on or about November 3, 2008, nor did they confirm what assets the Severstal Trust would receive from the WHX Trust in advance or question the asset selection after receipt.  On or about November 3, 2008, the WHX Trust transferred its account with Neuberger Berman to the Severstal Trust.  The account was valued at the time of transfer at $31,446,845 which represented the majority of the Plans' interest in the WHX Trust.  The Plans received the remainder of their assets on March 31, 2009 when the WHX Trust conducted a final accounting and made a distribution of $5,921,621 in cash to the Plans.

20. On or about November 4, 2008, DiClemente, on behalf of the SRC, confirmed the transfer of the Neuberger Berman account to the Severstal Trust by letter to Citibank. DiClemente backdated the letter to November 3, 2008.

21. The Neuberger Berman account was not diversified.  Approximately 97% of its value was invested in eleven large cap energy stocks.

22. The Plans did not have a written investment management agreement from on or about November 3, 2008 until December 5, 2008.  The Plans remained invested in the undiversified Neuberger Berman account during that same period.  From on or about

November 3, 2008 through December 5, 2008, WPN and LaBow failed to manage the Plans' investments. During that same period the SRC, DiClemente, and Halpin failed to monitor WPN and LaBow, failed to discover that WPN and LaBow were not investing the Plans' assets, and failed to discover that the Neuberger Berman account was not diversified.

23. On or about December 5, 2008, DiClemente, on behalf of the SRC, signed an investment management agreement with LaBow and WPN. As stated above, the agreement was titled the Third Amendment to the Severstal Wheeling, Inc. Investment Management Agreement ("IM Agreement") and was based on the prior investment management agreements between WPN and the WHX Trust. The parties backdated the IM Agreement to November 1, 2008.

24. After the IM Agreement was signed on or about December 5, 2008, WPN and LaBow continued to fail to invest the Plans' assets through December 30, 2008. The SRC, DiClemente, and Halpin likewise did not monitor WPN and LaBow after the IM Agreement was signed on or about December 5, 2008 through December 30, 2008 and did not discover that WPN and LaBow were failing to invest the Plans' assets. Specifically, the SRC, DiClemente, and Halpin continued to fail to discover that the Neuberger Berman account was undiversified during that same period. The Plans' assets remained in the Neuberger Berman account through December 30, 2008.

25. On or about December 30, 2008, DiClemente informed LaBow and WPN that the SRC, DiClemente, and Halpin had just learned that the Plans were undiversified in the Neuberger Berman account.

26. From on or about December 30, 2008 to March 24, 2009, WPN and LaBow still failed to prudently manage the Plans' assets, which remained in the undiversified Neuberger Berman account. The SRC, DiClemente, and Halpin communicated with WPN and LaBow from December 30, 2008 through March 24, 2009 but did not ensure that they prudently invested the Plans' assets. The Plans remained invested in the undiversified Neuberger Berman account until on or about March 24, 2009.

27. On or about March 24, 2009, WPN and LaBow sold the assets in the Neuberger Berman account for cash.

28. From on or about March 24, 2009 until they were fired on May 19, 2009, WPN and LaBow failed to invest the Plans' assets, which remained in cash.

29. From on or about March 24, 2009 to May 1, 2009, the SRC and Halpin communicated with WPN and LaBow but did not ensure that they prudently invested the Plans' assets. The Plans' assets remained in cash from on or about March 24, 2009 through May 19, 2009.

30. By failing to prudently invest the Plans' assets from on or about November 3, 2008 through May 19, 2009, WPN and LaBow caused the Plans to suffer significant losses and lost earnings.

31. The SRC, and its members DiClemente and Halpin, failed to properly oversee the Plans and monitor WPN and LaBow from on or about November 3, 2008 through May 1, 2009, in breach of their fiduciary duties as well. The fiduciary breaches by the SRC, DiClemente, Halpin, WPN, and LaBow caused the Plans to sustain losses and lost earnings in excess of $7 million.

32. In the alternative, WPN and LaBow did not act as investment managers of the Plans from on or about November 1, 2008 until on or about December 5, 2008. The backdating of the IM Agreement was ineffective to relieve the SRC, DiClemente, and Halpin from their responsibility to invest the Plans' assets. The SRC, DiClemente, and Halpin retained control of the Plans' assets from on or about November 1, 2008 until on or about December 5, 2008 and failed to prudently invest those assets in violation of their fiduciary duties under ERISA.

33. From on or about November 3, 2008 through May 19, 2009, the Plans suffered losses and lost earnings in excess of $7 million.

## **VIOLATIONS**

34. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts by reference the averments and allegations of paragraphs 1-34, inclusive.

35. By the actions and conduct described above, WPN and LaBow:

    a. failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plans, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and,

    b. failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise

   of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

36. By the actions and conduct described above, the SRC, DiClemente, and Halpin:

  a. failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plans, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and,

  b. failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

## **PRAYER FOR RELIEF**

WHEREFORE, the Secretary prays that this Court enter an Order:

A. Ordering defendants WPN, LaBow, SRC, DiClemente, and Halpin to restore to the Plans all losses, including interest or lost opportunity costs, which were caused by their fiduciary misconduct;

B. Awarding the Secretary of Labor the costs of this action; and,

C.  Awarding such other relief as is equitable and just.

                Respectfully submitted,

                Nicholas C. Geale
                Acting Solicitor of Labor

                Oscar L. Hampton III
                Regional Solicitor

                /s/ John M. Strawn
                Senior Trial Attorney
                PA ID # 49789
                Office of the Solicitor
                Suite 630 East, The Curtis Center
                170 South Independence Mall West
                Philadelphia, PA 19106-3306
                Telephone No. (215) 861-5145
                Facsimile No. (215) 861-5162
                strawn.john@dol.gov
                sol.phi.docket@dol.gov

                U.S. DEPARTMENT OF LABOR

BY:    /s/ Michael A. Comber
        Assistant United States Attorney
        PA ID # 81951
        U.S. Department of Justice
        United States Attorney's Office
        700 Grant Street, Suite 400
        Pittsburgh, PA 15219
        michael.comber@usdoj.gov

        Attorneys for Plaintiff

        June 28, 2017