UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | : |
| Plaintiff, | : |
| v. | : Case No. 2:14-cv-01494-NBF |
| WPN CORPORATION, RONALD LABOW, SEVERSTAL WHEELING, INC. RETIREMENT COMMITTEE, MICHAEL DICLEMENTE, DENNIS HALPIN, WHEELING CORRUGATING COMPANY RETIREMENT SECURITY PLAN, and SALARIED EMPLOYEES' PENSION PLAN OF SEVERSTAL WHEELING, INC., | : |
| Defendants. | : |

---

**SECRETARY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS WPN CORPORATION AND RONALD LABOW**

**I.    INTRODUCTION**

Plaintiff, R. Alexander Acosta, Secretary of Labor, United States Department of Labor, ("Secretary"), has filed a motion pursuant to Federal Rule of Civil Procedure 56 for summary judgment against Defendants WPN Corporation and Ronald LaBow ("Defendants") and submits this memorandum of law in support.  For the reasons set forth below, the Secretary is entitled to judgment against the Defendants as a matter of law.  The Wheeling Corrugating Company Retirement Security Plan and the Salaried Employees' Pension Plan of Severstal Wheeling, Inc. ("the Plans") are employee retirement plans and are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Defendants were fiduciaries to the Plans, breached their duties to prudently invest the Plans' assets in violation of ERISA,

and caused the Plans' participants and beneficiaries to suffer millions of dollars in losses to their retirement savings.

Defendants were previously found liable for these ERISA violations by Judge Laura Taylor Swain in her decision issued on August 10, 2015 in the amount of approximately $15 million. *Severstal Wheeling, Inc. Retirement Committee v. WPN Corp.*, 119 F. Supp. 3d 240, 270 (S.D.N.Y. 2015) ("*Severstal I*"). The Second Circuit Court of Appeals upheld the decision on August 30, 2016. *Severstal Wheeling, Inc. Retirement Committee v. WPN Corp.,* 659 F. App'x 24 (2nd Cir. 2016) ("*Severstal II*").

The Secretary is not seeking a double recovery for these violations. The Secretary included Defendants as necessary parties to the instant litigation. The Plans had 945 participants at the end of the 2008 plan year and 796 at the end of 2009. See Form 5500 reports in the Appendix. To date, only about 15% of the award from the Southern District of New York has been satisfied from the sale of WPN's condominium in New York City.

**II.    ARGUMENT**

    A.    <u>The Secretary is Entitled to Summary Judgment Against Defendants.</u>

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment on a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006)). Disputed facts will only preclude summary judgment

2

if they might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* When deciding a motion for summary judgment, a court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the nonmoving party's favor given the record as a whole. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). However, conclusory or speculative allegations do not suffice to create a genuine dispute, nor does a mere scintilla of evidence in support of the nonmoving party's case. *Thompson v. Potomac Elec. Power*, 312 F.3d 645, 649 (4th Cir. 2002). The party opposing summary judgment must set out specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c)(1).

Based on the factual findings made in the Southern District of New York and based on Mr. LaBow's admissions made at his deposition in the instant case, the parties do not have to retry the same violations of ERISA against Defendants, and the Secretary is entitled to summary judgment as a matter of law.

        B.      <u>Defendants are Precluded from Re-Litigating Previously Decided Issues.</u>

Defendants should be collaterally estopped from re-litigating their violations of ERISA in this Court based on their previous litigation of the same conduct in the Southern District of New York and the Second Circuit. When considering the preclusive effect of a prior federal case, federal law principles of collateral estoppel apply. *Doe v. Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016); *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir. 1999). Under federal law, collateral estoppel precludes parties from litigating issues at trial where: (1) the issues between the first trial and the second are identical; (2) the identical issues were actually litigated; (3) the identical issues were necessary to a final judgment on the merits; and, (4) the party being

3

precluded from re-litigating the issues had full opportunity to litigate upon the issues in court. *Doe v. Hesketh*, 828 F.3d at 171; *Smith v. Borough of Dunmore*, 516 F. App'x 194 (3d Cir. 2013).

The instant case deals with the same Defendants, the same facts, and the same legal issues decided by the Southern District of New York and the Second Circuit. Defendants had a full opportunity to litigate the issues and those courts found that they were ERISA fiduciaries and had breached their fiduciary duties to the Plans. *Severstal I* at 267–68. Specifically, the trial court found Defendants in violation of Sections 404(a)(1)(A), (B) of ERISA, 29 U.S.C. §§ 1104(a)(1)(A), (B), for transferring an undiversified portfolio of stocks to the Plans and failing to manage those assets with the care, skill, and prudence required of fiduciaries. *Severstal I* at 264–69. The court also found that the losses suffered by the participants and beneficiaries of the Plans were chargeable to the Defendants. *Severstal I* at 269–70. The Second Circuit affirmed the lower court's holdings. *Severstal II* at 28.

In this case, the Secretary is also asserting that Defendants violated Sections 404(a)(1)(A), (B) of ERISA for failing to manage the Plans' assets in violation of their duties as investment manager of the Plans. Since Defendants already challenged these claims in the Southern District of New York and the Second Circuit and were found to be liable after a fair trial and appeal, collateral estoppel prevents them from now re-litigating the same issues in this Court.

      C.    <u>The Secretary May Assert Collateral Estoppel in this Case.</u>

The Secretary does not have to have been a litigant in the prior case in order to assert collateral estoppel against Defendants in the instant case. A litigant need not have been a party

to a prior litigation for collateral estoppel to prevent the litigation of a previously decided issue. *See Bruszewski v. U.S.*, 181 F.2d 419, 422 (3d Cir. 1950) (judgment against plaintiff in prior suit was *res judicata* in present suit against different defendant). Likewise, a new plaintiff may use collateral estoppel offensively to preclude a defendant from re-litigating an issue the defendant previously argued and lost against another plaintiff. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331-32 (1979) (upholding the use of offensive collateral estoppel by a plaintiff to prevent the re-litigation of an issue decided in a previous suit brought by the SEC); *U.S. v. Webber*, 396 F.2d 381, 385 (3d Cir. 1968) (holding defendant was precluded by collateral estoppel from re-litigating the nature of an agreement with the Government even though the Government was not a party to the litigation in which the issue was decided).

   Trial courts are granted broad discretion in determining when offensive collateral estoppel should be applied. *Parklane Hosiery*, 439 U.S. at 331. Some scenarios in which the application of offensive estoppel is not be applied due to fairness concerns include: (1) where the party against whom it is to be applied had no incentive to defend the first action vigorously; (2) where the second action offers procedural opportunities unavailable in the first action; and, (3) where the judgment relied on is inconsistent with other decisions. *Jack Faucett Associates, Inc. v. American Tel. and Tel. Co.*, 744 F.2d 118, 125–26 (D.C. Cir. 1984) (citing *Parklane Hosiery*, 439 U.S. at 328–31). *See, also*, *Raytech Corp v. White*, 54 F.3d 187, 195 (3d Cir. 1995) (citing *Parklane Hosiery*, 439 U.S. at 330–31); *cf. Berner v. British Commonwealth Pac. Airlines*, 346 F.2d 532 (2d Cir. 1965) (offensive collateral estoppel denied when defendant did not appeal an adverse judgment for $35,000 in damages when defendant was subsequently sued for $7

million). Additionally, allowing offensive estoppel may be unfair if the judgment relied upon is inconsistent with other judgments in favor of a defendant. *Raytech Corp.*, 54 F.3d at 195.

      Offensive collateral estoppel is appropriate here because no concerns of unfairness are present. Two courts have already ruled on Defendants' ERISA liability and there are no inconsistent decisions. There are no additional procedural opportunities available to Defendants in the instant case that were not available in the New York action. Furthermore, joinder of the Secretary in the previous private action would have been impractical because the Secretary's national public interest in bringing enforcement actions is distinct from those of private litigants who seek to redress individual grievances or to recoup losses. *See, e.g.*, *Herman v. South Carolina Nat. Bank*, 140 F.3d 1413, 1424 (citing *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 693 (7th Cir. 1986)); *see also Secretary United States Department of Labor v. Kwasny*, 853 F.3d 87, 95 (3d Cir. 2017) (agreeing with other circuit courts that private litigants do not adequately represent the Secretary's public interest). Moreover, the Secretary's limited resources do not allow him to investigate every allegation of ERISA violations or to join every private suit alleging violations of ERISA.

      Defendants had incentive to present a vigorous defense in the prior case, as they were accused of ERISA violations that would subject them to millions of dollars in liability if they were found responsible. *See Severstal I* at 260–63 (discussing damages). They were certainly incentivized to present their best defense on appeal after they were found liable for a total judgment of $15,016,327.74. *See Severstal I* at 270. As there is no reason to believe that applying collateral estoppel would be unfair to the Defendants -- who have already made their arguments at trial and on appeal -- Defendants should be collaterally estopped from rearguing the

same issues in this Court.  *See Parklane Hosiery*, 439 U.S. at 332 (noting that refusal to allow offensive collateral estoppel is unwarranted when no considerations of unfairness are present).

    D.  <u>The Plans are Governed by ERISA.</u>

  No dispute exists over whether the Plans are covered under ERISA.  ERISA applies to any "employee benefit plan established or maintained by . . . any employer engaged in commerce."  29 U.S.C. § 1003(a).  An "employee welfare benefit plan" is any plan, fund, or program established or maintained by an employer for the purpose of providing certain benefits, including retirement benefits, for its participants or their beneficiaries.  29 U.S.C. §§ 1002(1), 186(c).  "An ERISA plan 'is established if from the surrounding circumstances a reasonable person can ascertain (1) the intended benefits, (2) a class of beneficiaries, (3) the source of financing, and (4) procedures for receiving benefits.'"  *Menkes v. Prudential Ins. Co. of America*, 762 F.3d 285, 290 (3d Cir. 2014) (quoting *Shaver v. Siemens Corp.*, 670 F.3d 462, 475 (3d Cir. 2012)).  Important factors in this analysis are "whether the employer has expressed an intention to provide benefits on a regular and long-term basis," *Gruber v. Hubbard Bert Karle Weber, Inc.*, 159 F.3d 780, 789 (3d Cir. 1998), and whether the plan establishes a "separate and ongoing administrative scheme . . . to determine eligibility for benefits."  *Menkes*, 762 F.3d at 290 (quoting *Shaver*, 670 F.3d at 476).

  The Southern District of New York found that the Plans were covered under ERISA and made factual findings in support.  The Plans were defined contribution plans, funded by direct employer contributions, to provide retirement benefits to employees on a regular and long-term basis.  *Severstal I* at 243, n.2, JX 6 at p. 8-9, JX 7 at p. 8-9.  Indeed, Mr. LaBow testified at his deposition in the present case, that the Plans were governed by ERISA and that the Plans needed

7

cash to be able to pay benefits to employees. Ronald LaBow Deposition, September 21-22, 2017 ("LaBow") at 47, 89-90, 143, 155, 258, 271, 307-08. The Plans' documents also provide for an administrative scheme by which employees were enrolled in and received benefits from the Plans. *Severstal I* at 243, n.2, JX 6 at p. 5, 16, JX 7 at p. 8, 13, 14. Therefore, based on the factual findings in the Southern District of New York and Mr. LaBow's testimony at his deposition in the current case, the Plans are governed by ERISA and the Secretary is entitled to summary judgment on this issue.

   E.  Defendants are Fiduciaries to the Plans.

  Under ERISA, a person is a plan fiduciary where he is named as such in the plan instrument, *see* 29 U.S.C. § 1102(a), or where he "exercises any discretionary authority or discretionary control respecting management of such plan[.]" 29 U.S.C. § 1002(21)(A)(i). A person may also be a fiduciary to the extent he "exercises any authority or control," discretionary or not, "respecting management or disposition of its assets." *Id*. Further, a person may be a fiduciary if he "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii). The term "administration" means acting with "such powers as are necessary or appropriate for the carrying out of the purposes" of the plan. *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996) (internal quotation marks omitted). Because ERISA defines "fiduciaries" to include not only those named in plan documents, but also those who function as fiduciaries with control and authority over the plan, it "expand[s] the universe of persons subject to fiduciary duties." *Mertens v. Hewitt Assocs*., 508 U.S. 248, 262 (1993).

There is no dispute that Defendants were fiduciaries to the Plans. Judge Swain found Defendants to be fiduciaries and made factual findings in support. Defendants accepted fees for providing investment advice. *Severstal I* at 262. Mr. LaBow at his deposition in the present case admitted that he spoke with Mr. DiClemente and Mr. Halpin frequently about the Plans' investments after they discovered the assets were undiversified and unmanaged. LaBow at 107, 201. Moreover, Mr. LaBow at his deposition also admitted that he agreed to continue as a fiduciary, as the investment manager to the Plans, after the Severstal Trust separated from the WHX Trust. *Severstal I* at 246; LaBow at 226, 232, 241.

Defendants explicitly accepted fiduciary status in the Investment Management Agreement ("IM Agreement") with the Retirement Committee. *Severstal I* at 246-47; LaBow EX 4 at p.4. The IM Agreement gave Mr. LaBow the *authority* to invest the Plans' assets regardless of whether he exercised his authority. *Severstal I* at 247, 252, 265-66; LaBow EX 4 at pp. 3, 4. The IM Agreement specified that Mr. LaBow had "primary responsibility for performing the services" under the IM Agreement. *Severstal I* at 247, LaBow EX 4 at p. 3. Judge Swain determined that Defendants had "complete, unlimited and unrestricted management authority with respect to the investment" of the Plans' assets pursuant to the IM Agreement. *Severstal I* at 247.

Defendants exercised *control* over the Plans' assets by finally selling the Neuberger Berman account for cash on March 24, 2009. *Severstal I* at 257-58, 264; LaBow EX 24.

Therefore, based on the factual findings by Judge Swain and Mr. LaBow's admissions at his deposition in the instant case, Defendants were fiduciaries to the Plans and the Secretary is entitled to summary judgment on this issue as well.

F.	Defendants Breached their Fiduciary Duties to the Plans in Violation of ERISA.

ERISA imposes three different but overlapping requirements on fiduciaries, including the duty of loyalty, the duty of prudence, and the duty to act for the exclusive purpose of providing benefits to plan participants.  29 U.S.C. § 1104(a)(1)(A), (B); *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982).  Congress meant for courts to interpret the fiduciary standards through the development of a federal common law of rights and obligations under the statute, *see Varity Corp.*, 516 U.S. at 497, with the underlying principle that fiduciary duties are "the highest known to the law." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014) (citation omitted).  Breaching these duties subjects fiduciaries to personal liability to make good to the plan any losses resulting from breaches of fiduciary duty.  29 U.S.C. § 1109(a); *Tatum,* 761 F.3d at 356.

The Southern District of New York concluded that Defendants had violated their fiduciary duties to the Plans and made findings of fact in support.  Defendants selected the Neuberger Berman account, an undiversified portfolio consisting almost entirely of large cap energy stocks, to transfer to the Plans.  *Severstal I* at 249, 250, 264, 265, 267; LaBow at 78, 79.  Mr. LaBow knew that neither he nor Neuberger Berman was managing the account.  *Severstal I* at 250, 264, 265, 267; LaBow at 195.  This breach was even more egregious due to the prevailing adverse economic conditions.  Mangiero Report at 9, 13.

At his deposition in the instant case, Mr. LaBow admitted that he had selected the Neuberger Berman account to transfer to the new Severstal Trust, he knew it was not diversified, and that Neuberger Berman was not under contract to continue managing the account.  LaBow at 132, 190, 235, 241-43.  Indeed, Mr. LaBow stated to the Retirement Committee that "Maybe I

10

did something wrong" on February 11, 2009, belatedly taking some responsibility for his actions in transferring the Neuberger Berman account and leaving it unmanaged. LaBow at 277, 278, EX 35 at p. 2. After November 3, 2008, Defendants allowed the assets to remain undiversified in the Severstal Trust until they were fired on May 19, 2009. *Severstal I* at 258, 259, 264, 265, 267. Mr. LaBow's admissions in his deposition are largely consistent with the factual findings of the Southern District of New York. Therefore, the Secretary is entitled to summary judgment that Defendants breached their fiduciary duties to the Plans.

> G. Defendants are Liable for the Losses Their Fiduciary Breaches Caused the Participants and Beneficiaries of the Plans.

The trial court in the Southern District of New York found Defendants liable for approximately $15 million for their fiduciary breaches. *Severstal I* at 270. The Secretary is not seeking a double recovery but is seeking a judgment for the period November 1, 2008 through May 19, 2009 and any amounts recovered in the New York action should be credited against the judgment entered against Defendants in this case. The Secretary's expert, Dr. Susan Mangiero, concluded that the participants and beneficiaries of the Plans suffered between $6,775,243 and $7,823,373 in losses as a result of their investment in undiversified and imprudent assets. Mangiero at 34. This is figure is lower than the judgment of the Southern District of New York due in part to the more conservative investment portfolio Dr. Mangiero used for comparison and the shorter time frame. Mangiero at 32-34. These losses were due to their investment in the undiversified Neuberger Berman account from November 1, 2008 to March 24, 2009 when they were sold for cash. In addition, the Plans sat undiversified in cash from March 24, 2009 through May 19, 2009 when Defendants were fired as investment manager to the Plans. Dr. Mangiero used conservative asset mixes appropriate for retirement plans such as the Plans and compared

their investment results to those of the Plans over the time period in question. Mangiero at 32-34. Therefore, based on the factual findings in the Southern District of New York and the analysis by Dr. Mangiero, the Secretary is entitled to judgment against Defendants in an amount not less than $6,775,243.

## III. CONCLUSION

Based on the findings in the Southern District of New York, Mr. LaBow's admissions in the instant case, and the analysis by Dr. Mangiero, there is no material issue of fact to be tried before this Court. The Secretary is entitled to judgment as a matter of law that Defendants were fiduciaries to the Plans and breached their duties, causing between $6,775,243 and $7,823,373 in

losses to the participants and beneficiaries of the Plans.

                              Respectfully submitted,

                              KATE S. O'SCANNLAIN
                              Solicitor of Labor

                              OSCAR L. HAMPTON III
                              Regional Solicitor

                              JODEEN M. HOBBS
                              Regional Counsel for ERISA

                              /s/ John M. Strawn
                              Attorney, PA ID # 49789
                              Katrina T. Liu
                              Attorney, PA ID # 318630
                              Office of the Solicitor
                              Suite 630 East, The Curtis Center
                              170 South Independence Mall West
                              Philadelphia, PA 19106-3306
                              Telephone No. (215) 861-5145
                              Facsimile No. (215) 861-5162
                              strawn.john@dol.gov
                              zzsol-phi-docket@dol.gov

                              U.S. DEPARTMENT OF LABOR

                              SCOTT W. BRADY
                              United States Attorney

                              /s/ Paul E. Skirtich
                              Assistant United States Attorney
                              PA ID # 30440
                              U.S. Department of Justice
                              United States Attorney's Office
                              700 Grant Street, Suite 400
                              Pittsburgh, PA 15219
                              paul.skirtich@usdoj.gov

                              Attorneys for Plaintiff

                              September 25, 2018