UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | : |
| Plaintiff, | : |
| v. | : Case No. 2:14-cv-01494-NBF |
| WPN CORPORATION, RONALD LABOW, SEVERSTAL WHEELING, INC. RETIREMENT COMMITTEE, MICHAEL DICLEMENTE, DENNIS HALPIN, WHEELING CORRUGATING COMPANY RETIREMENT SECURITY PLAN, and SALARIED EMPLOYEES' PENSION PLAN OF SEVERSTAL WHEELING, INC., | : |
| Defendants. | : |

---

**SECRETARY'S RESPONSE TO CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT CONCERNING DUTY TO MONITOR OF DEFENDANTS SEVERSTAL WHEELING, INC. RETIREMENT COMMITTEE, MICHAEL DICLEMENTE, AND DENNIS HALPIN**

Plaintiff, R. Alexander Acosta, Secretary of Labor, United States Department of Labor, ("Secretary"), hereby responds to the concise statement of material facts in support of the motion for summary judgment concerning the duty to monitor filed by Defendants Severstal Wheeling, Inc. Retirement Committee ("Retirement Committee"), Michael DiClemente, and Dennis Halpin ("Defendants").

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Undisputed.

11. Undisputed.

12. Undisputed.

13. Undisputed.

14. Undisputed only that the SWI Investment Management Agreement was signed on or about December 5, 2008 and that Mr. LaBow wrote November 1, 2008 as the date.

15. Undisputed only that Mr. LaBow testified to his law degrees at his deposition. Mr. LaBow also testified that he never practiced law. Ronald LaBow Deposition of September 21-22, 2017 at 35, 36.

16. Undisputed.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Undisputed.

21. Disputed. The Second Amendment to the WHX Corporation Investment Consulting Agreement effective August 1, 2008 changed Mr. LaBow's status from investment consultant to investment manager. *Severstal Wheeling, Inc. Retirement Committee v. WPN Corp.*, 119 F. Supp. 3d 240, 244 (S.D.N.Y. 2015) ("*Severstal I*").

22. Disputed. Mr. LaBow testified that he did not consider himself to be a fiduciary. LaBow at 228, 232.

23. Undisputed.

24. Undisputed only that Mr. LaBow was the investment consultant and then investment manager for those periods but the Retirement Committee was the plan administrator.

25. Undisputed.

26. Undisputed.

27. Undisputed.

28. Undisputed.

29. Undisputed.

30. Disputed. Dr. Susan Mangiero stated and Mercer's 2006 report indicated that the WHX Trust was not diversified and was very aggressively managed. Dr. Mangiero's report of December 11, 2017 ("Mangiero Report") at 12, 28, 31; Dr. Mangiero's Rebuttal Report of February 16, 2018 ("Mangiero Rebuttal Report") at 7, 10, 11.

31. Disputed. Dr. Mangiero stated that WHX Trust performance had not been reviewed on a risk adjusted basis appropriate for small retirement plans. Mangiero Report at 30; Mangiero Rebuttal Report at 7, 8.

32. Disputed. Prior to the trust separation, Mr. LaBow ignored Defendant's direction to separate the trusts on September 30, 2008 with a proportional share of all of the assets. Defendants previously believed the Severstal Trust would receive all cash in the separation. From the trust separation onward, Mr. LaBow breached his fiduciary duties to the Plans. *Severstal I* at 247, 248; Michael DiClemente Deposition, September 26, 2017 ("DiClemente") at 37, 38, 44, EX 6, 7; David Riposo Deposition of February 2, 2012 ("Riposo") at 52-54, EX 8.

33.     Disputed.  Prior to the trust separation, Mr. LaBow ignored Defendant's direction to separate the trusts on September 30, 2008 with a proportional share of all of the assets. Defendants previously believed the Severstal Trust would receive all cash in the separation. Defendants were on notice from when they accepted the Neuberger Berman account into the Severstal Trust that they had not received the proportional share of the WHX assets that they expected.  Defendants were on notice that Mr. LaBow was not managing the Plans' assets as they had expected when Citibank, Mr. LaBow, and Neuberger Berman contacted them in order to retain Neuberger Berman to manage the Plans' assets.  On December 12, 2008, Defendants learned that Neuberger Berman was not managing the Plans' assets.  *Severstal I* at 247-49; DiClemente at 37, 38, 44, 49, 55-62, 66, 67, EX 6, 7, 9, 11, 12, 13, 14, 15, 20; Riposo at 52-54, EX 8; Dennis Halpin Deposition, September 27, 2017 ("Halpin") at 23.

34.     Undisputed.

35.     Undisputed only LaBow expressed interest in continuing to be investment manager to the Plans and that he signed the SWI Investment Management Agreement on December 5, 2008, backdating it to November 1, 2008.  Disputed that LaBow prudently managed the Plans' assets.

36.     Undisputed.

37.     Undisputed.

38.     Undisputed only that Defendants expected to get a proportional share of the WHX assets for the Severstal Trust.  Disputed that WHX Trust assets were diversified.  Mangiero Report at 12, 28, 31; Mangiero Rebuttal Report at 7, 10, 11.

39.     Undisputed.

4

40. Disputed. Mr. LaBow testified that he said he would try to achieve a proportionate share of the WHX assets for the new Severstal Trust. LaBow at 85.

41. Undisputed.

42. Disputed. Defendants were the only persons who could accept the Neuberger Berman account into the Severstal Trust. DiClemente at 53, 88, EX 10, 11; *Severstal I* at 250.

43. Disputed. Defendants were the only persons who could accept the Neuberger Berman account into the Severstal Trust. DiClemente at 53, 88, EX 10, 11; *Severstal I* at 250.

44. Undisputed.

45. Undisputed that LaBow knew Defendants were expecting a proportionate share of the WHX assets and that LaBow asked WHX to initiate a transfer of the Neuberger Berman account. However, Defendants were the only persons who could accept the Neuberger Berman account into the Severstal Trust. DiClemente at 53, 88, EX 10, 11; *Severstal I* at 250

46. Undisputed that the Neuberger Berman account was heavily weighted with large cap energy stocks and that LaBow selected the account to transfer. However, Defendants did not have a written agreement with LaBow as to the assets they would receive in the trust separation and did not check to see what assets they received. DiClemente at 44, 45; Halpin at 23, 24; *Severstal I* at 249, 250.

47. Disputed. Defendants accepted the Neuberger Berman account in writing on November 4, 2008 and backdated the letter to Citibank to November 3, 2008. Defendants expected a proportional share of the funds in the WHX trust but only received the Neuberger Berman account and did not accept any other funds into the Severstal Trust. DiClemente at 53, 88, EX 10, 11; *Severstal I* at 250.

48. Undisputed that Defendants communicated with Mercer on or about December 29, 2008 regarding the Plans' assets. However, Defendants accepted the Neuberger Berman account in writing on November 4, 2008 and backdated the letter to Citibank to November 3, 2008. DiClemente at 53, 88, EX 10, 11; *Severstal I* at 250.

49. Undisputed only that Defendants contacted Mr. Labow on or about December 30, 2008.

50. Disputed. Defendants were the only persons who could accept the Neuberger Berman account into the Severstal Trust. DiClemente at 53, 88, EX 10, 11; *Severstal I* at 250.

51. Undisputed that WHX accepted Mr. LaBow's direction to transfer the Neuberger Berman account to the Severstal Trust. However, Defendants were the only persons who could accept the Neuberger Berman account into the Severstal Trust. DiClemente at 53, 88, EX 10, 11; *Severstal I* at 250.

52. Undisputed.

53. Undisputed only that WHX wanted an indemnification agreement from Mr. LaBow regarding the assets transferred to the Severstal Trust.

54. Undisputed.

55. Undisputed that Mr. LaBow stated that he may have made a mistake, but he did not specify what actions or omissions he regretted. LaBow at 276-78.

56. Undisputed.

57. Disputed. The transcript is from Attorney Sally King's voice mail.

58. Undisputed only that after December 29, 2008, Defendants communicated with LaBow regarding the investment of the Plans' assets.

59. N/A.

60. Undisputed.

61. Undisputed only that Mr. DiClemente and Ms. King spoke with Mr. LaBow on December 30, 2008 regarding the Plans' investments, and that Ms. King sent an email on December 30, 2008 regarding next steps.

62. Undisputed.

63. Undisputed.

64. Undisputed.

65. Undisputed.

66. Undisputed.

67. Undisputed.

68. Undisputed.

69. Undisputed.

70. Undisputed.

71. Undisputed.

72. Undisputed.

73. Undisputed.

74. Undisputed.

75. Undisputed.

76. Undisputed.

77. Undisputed only that Mr. LaBow testified that Ms. King's request for the audit of the trust separation was a fair request for information.

78. Undisputed.

79. Undisputed.

80. Disputed. Defendants breached their fiduciary duty to monitor Mr. LaBow. Mangiero Report at 10, 13, 14, 16, 17, 19, 24, 31; Mangiero Rebuttal Report at 6-12.

81. Disputed. Mr. LaBow was an imprudent choice to be the investment manager for the Plans. His firm was small with few clients and no other investment managers beside Mr. LaBow. His strategy was unorthodox, undiversified, and highly concentrated. Mercer stated that Mr. LaBow's investment strategy was "one of the most aggressively actively managed strategies that we have ever seen." Mangiero Report at 10, 12, 26, 28, 30, 31: Mangiero Rebuttal Report at 5, 6, 7, 11.

82. Undisputed only that past performance is one of a number of factors for investment committees to consider.

83. Disputed. The record has no evidence of meetings prior to December 29, 2008. Defendants did not obtain a written agreement from Mr. LaBow of the assets they would receive from the WHX Trust. Defendants did not have a written investment policy in place prior to or after the trust separation. Defendants did not have a written investment management agreement with Mr. LaBow at the time of the trust separation and were still negotiating with him until it was signed a month later on December 5, 2008. Defendants never signed the fee schedule with Neuberger Berman and left the Plans' assets unmanaged in the Neuberger Berman account from November 3, 2008 until Mr. LaBow sold the assets for cash on March 24, 2009. DiClemente at 44, 45, 63, 64, 65, 178, 179, EX 16-19, 51, 52; Halpin at 23, 24, 226; Mangiero Deposition of February 28, 2018 ("Mangiero Deposition") at 146; *Severstal I* at 259.

84. Undisputed.

85. Undisputed.

86. Disputed. Defendants were the only persons who could accept the Neuberger Berman account into the Severstal Trust. Defendants also breached their duty to monitor Mr. LaBow. DiClemente at 53, 88, EX 10, 11; *Severstal I* at 250; Mangiero Report at 10.

87. Undisputed that DiClemente learned information about the Neuberger Berman account from Mercer on December 29, 2008. However, Defendants should not have accepted the Neuberger Berman account into the Severstal Trust and should have discovered it was undiversified and unmanaged before December 29, 2008. Mangiero Report at 10, 11, 14; Mangiero Rebuttal Report at 6, 10.

88. Undisputed.

89. Disputed. The Plans required more than standard monitoring in the facts and circumstances surrounding the trust separation during the financial crisis. Mangiero Report at 9, 10; Rebuttal Report at 9, 10.

90. Disputed. Defendants were the only persons with the authority to accept the Neuberger Berman account into the Severstal Trust. Defendants should have discovered that the Plans' assets were undiversified and unmanaged. DiClemente at 53, 88, EX 10, 11; *Severstal I* at 250; Mangiero Report at 10, 11, 14; Mangiero Rebuttal Report at 6, 10.

91. Disputed. Appropriate corrective action depends on the facts and circumstances and Defendants in this case should have fired Mr. LaBow before May 1, 2009. Mangiero Report at 10, 31.

92. Disputed. Appropriate corrective action depends on the facts and circumstances and Defendants in this case should have fired Mr. LaBow before May 1, 2009. Mangiero Report at 10, 31.

93. Disputed. Based on the facts and circumstances in this case, Defendants failed to take appropriate corrective action and should have fired Mr. LaBow before May 1, 2009. Mangiero Report at 10, 31.

94. Disputed. Appropriate corrective action depends on the facts and circumstances and Defendants in this case should have fired Mr. LaBow before May 1, 2009. Mangiero Report at 10, 31.

95. Undisputed that Mr. LaBow testified to speaking to Ms. King in the summer of 2008.

96. Disputed. Appropriate corrective action depends on the facts and circumstances and Defendants in this case should have fired Mr. LaBow before May 1, 2009. Mangiero Report at 10, 31.

97. Disputed. Dr. Mangiero refers to a number of actions Defendants should have taken with regard to Mr. LaBow in preparation for the trust separation, in asking questions before accepting the Neuberger Berman account into the Severstal Trust, in discovering that the Plans' assets were undiversified and unmanaged, in protecting the Plans assets and selling the Neuberger Berman account sooner, in giving Mr. LaBow a prudent investment policy and investment management agreement, and in discussing the Plans' requirements regarding the participants' demographics and the need for liquidity. Mangiero Report at 9, 10, 19, 22, 23, 29, 31; Mangiero Rebuttal Report at 6, 9, 10, 11.

98. Disputed. The time to terminate LaBow prior to May 1, 2009 depends on a number of factors. Mangiero Report at 10, 31; Mangiero Deposition at 196, 214, 215, 216. Daubert Motion Hearing May 22, 2018 ("Daubert Hearing") at 66, 67.

99.	Disputed.  There is a cost to removing an investment manager too slowly as well.  In the facts and circumstances in this case, Defendants should have followed up with Mr. LaBow before and after the trust separation.  Defendants should have discovered the Plans' assets were unmanaged and undiversified before December 29, 2008 and sold the Neuberger Berman account before March 24, 2009.  Mangiero Report at 10, 11; Daubert Hearing at 80, 101, 117.  Mangiero deposition at 197, 208.

100.	Disputed.  The facts and circumstances in this case regarding Mr. LaBow's fiduciary breaches and lack of a plan to diversify the Plans' assets required Defendants to act with greater speed to protect the Plans' assets.  Mangiero Report at 10, 31; Mangiero Deposition at 196, 214, 215, 216.  Daubert Hearing at 66, 67.

101.	Disputed.  The financial crisis required Defendants to have had better preparation for the trust separation and to prevent Mr. LaBow's fiduciary breaches to prevent losses to the Plans' assets.  Mr. LaBow could have been replaced within one or two days with an index fund manager, which is what the new Retirement Committee members did in July 2009.  Mangiero Report at 9, 10, 13, 14; Mangiero Deposition at 51, 73, 75, 77, 139, 197, 208.

102.	Disputed.  The financial crisis required Defendants to have had better preparation for the trust separation and to prevent Mr. LaBow's fiduciary breaches to prevent losses to the Plans' assets.  Mr. LaBow could have been replaced within one or two days with an index fund manager, which is what the new Retirement Committee members did in July 2009.  Mangiero Report at 9, 10, 13, 14; Mangiero Deposition at 51, 73, 75, 77, 139, 197, 208.

103.	Disputed.  Defendants did not remove Mr. LaBow.  The Retirement Committee did not terminate Mr. LaBow until after Mr. DiClemente and Mr. Halpin were replaced on the Retirement Committee.  *Severstal I* at 260.

104. Undisputed only that Dr. Stangle provided his view of the calculations as to damages in his report.

105. Undisputed.

106. Undisputed.

107. Undisputed.

108. Undisputed.

109. Disputed. Dr. Mangiero explains the appropriate asset mixes for retirement plans with the Plans' size and demographics. The WHX asset mix was undiversified and imprudent for small retirement plans. Mangiero Report at 9, 32, 33, 34. Mangiero Rebuttal Report at 7.

110. Undisputed.

111. Disputed. The WHX assets were undiversified and imprudent for small retirement plans such as the Plans in this case. Dr. Mangiero explains the appropriate asset mixes for retirement plans with the Plans' size and demographics. Mangiero Report at 9, 32, 33, 34. Mangiero Rebuttal Report at 7.

112. Disputed. Defendants breached their fiduciary duty several ways. Defendants did not adequately prepare for the trust separation, accepted the Neuberger Berman account into the Severstal Trust, failed to discover that the Plans' assets were undiversified and unmanaged, and failed to take appropriate corrective action after they belatedly discovered that the Plans were undiversified and unmanaged. Mangiero Report at 4, 11; Mangiero Rebuttal Report at 5, 6, 10;

DiClemente at 53, 88, EX 10, 11; Halpin at 23; *Severstal I* at 250.

                                              Respectfully submitted,

                                              KATE S. O'SCANNLAIN
                                              Solicitor of Labor

                                              OSCAR L. HAMPTON III
                                              Regional Solicitor

                                              JODEEN M. HOBBS
                                              Regional Counsel for ERISA

                                              /s/ John M. Strawn
                                              Attorney, PA ID # 49789
                                              Office of the Solicitor
                                              Suite 630 East, The Curtis Center
                                              170 South Independence Mall West
                                              Philadelphia, PA 19106-3306
                                              Telephone No. (215) 861-5145
                                              Facsimile No. (215) 861-5162
                                              strawn.john@dol.gov
                                              zzsol-phi-docket@dol.gov

                                              U.S. DEPARTMENT OF LABOR

                                              SCOTT W. BRADY
                                              United States Attorney

                                              /s/ Paul E. Skirtich
                                              Assistant United States Attorney
                                              PA ID # 30440
                                              U.S. Department of Justice
                                              United States Attorney's Office
                                              700 Grant Street, Suite 400
                                              Pittsburgh, PA 15219
                                              paul.skirtich@usdoj.gov

                                              Attorneys for Plaintiff

                                              October 25, 2018